

**U.S. Department of Justice**

United States Attorney's Office
District of New Jersey
*Civil Division*

---

*David Inkeles*
Assistant United States Attorney

*970 Broad Street, Suite 700*
*Newark, NJ 07102*
*david.inkeles@usdoj.gov*

*main: (973) 645-2700*
*direct:(973) 645-2813*

February 15, 2026

**<u>Via ECF</u>**
Hon. Renée Marie Bumb, C.U.S.D.J.
United States District Court
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

> Re:    ***Zambrano Diaz v. Tsoukaris, et al.*, No. 26-1301 (RMB)**
> **Expedited Answer to § 2241 Petition**

Dear Chief Judge Bumb:

This Office represents Respondents in this habeas action brought by Martir Zambrano Diaz. On February 10, 2026, the Court entered an order requiring Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) or to file an expedited answer if Respondents "contend that Petitioner's detention is distinguishable from the cases in this District previously addressing §1225," such as *Marca Lemu v. Soto*, No. 25-17098 (RMB), 2025 WL 3470298, at *3 (D.N.J. Dec. 3, 2025)) (interpreting § 1225(b)(2)), and *Rivas Rodriguez v. Rokosky*, No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025) (interpreting § 1225(b)(1)). ECF No. 3. Respondents respectfully submit that this case is distinguishable from cases like *Marca Lemu* and *Rivas Rodriguez*. Those cases interpreted § 1225, whereas Petitioner's detention here is governed by § 1231(a). That distinction is relevant and material. Petitioner's detention is lawful because he is subject to a reinstated final order of removal, and his detention comports with due process. For these reasons, discussed below, the Court should deny the petition.

## I.    Background: Petitioner Has a Reinstated Final Removal Order

Petitioner is a citizen of Honduras who entered the United States on an unknown date without admission or parole. *See* Ans. Ex. A ("I-213"); Ans. Ex. B ("NTA"). On March 10, 1998, he was found to be inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and placed into removal proceedings. *See* NTA. On March 27, 1998, an immigration judge ordered Petitioner's removal to Honduras. Ans. Ex. C ("Final Order of Removal"); *see also* I-213, at 3. Petitioner was removed from the United States on April 6, 1998. *See* I-213 at 3.

The instant habeas petition does not mention Petitioner's final order of removal from 1998 and alleges that Petitioner is a native of El Salvador who "moved to the United States in 2001." ECF No. 1 ("Pet."), ¶ 8. Petitioner further alleges that he has lived in Long Island, New York, for over 23 years. *Id.* ¶ 6.[1]

On February 4, 2026, U.S. Immigration and Customs Enforcement ("ICE"), Long Island Fugitive Operations, encountered an individual by the name of "Martin Sambran" as a collateral encounter during a targeted operation in Greenport, New York. *See* I-213, at 2. "Sambran" told officers he is a citizen of Honduras who illegally entered the United States and lacked lawful status. *Id.* After running fingerprints, ICE determined that "Sambran" was, in fact, Petitioner. *Id.* According to ICE, after a fingerprint check, "it was discovered that [Sambran] provided a false name and false DOB, [as] [b]iometrics revealed that his true name is Martir Zambrano Diaz … who was ordered removed from the United States on March 27, 1998." *Id.* at 3.

Based on this identity match, an ICE Deportation Officer determined that Petitioner is subject to a final order of removal and had illegally reentered the United States after voluntarily departing the country pursuant to that final order. *See* Ans. Ex. D ("I-871"). As a result, in accordance with § 1231(a)(5) and 8 C.F.R. § 241.8, ICE reinstated the final removal order. *See id.*; *see also* Ans. Ex. E ("Certification of Reinstatement"). ICE then issued an administrative warrant for Petitioner's removal pursuant to § 1231(a)(5). Ans. Ex. F ("Warrant for Removal"). ICE provided Petitioner written notice of the reinstated removal order and, according to the notice document, Petitioner declined to make a statement contesting the reinstatement. *See* I-871. Petitioner remains in detention subject to the reinstated order of removal.

## II.    Petitioner's Post-Final-Order Detention is Lawful

Petitioner filed the instant habeas petition on February 9, 2026, alleging that he is being unlawfully detained under § 1225(b)(2), and was arrested "without probable cause, without a custody determination, without an evaluation of flight risk or dangerousness, without giving him an opportunity to be heard, all in violation of the INA" and Fourth and Fifth Amendments. Pet. ¶ 57; *see also id.* ¶¶ 96-127. The Court should dismiss or deny the petition for the reasons below.

---

[1] Respondents recognize that Petitioner's counsel filed this petition without interviewing their client, and without reviewing "any recent detention documents" related to Petitioner's arrest and detention. Pet. ¶ 3. Accordingly, Respondents provided the documents attached to this response to Petitioner's counsel in advance of filing this response, on February 12, 2026, in an effort to avoid litigation. Petitioner's counsel indicated that Petitioner wishes to proceed with this habeas matter.

### A.   Petitioner's Detention Arises Under 8 U.S.C. § 1231(a)

As an initial matter, Petitioner's claims appear premised on the notion that ICE has detained him under 8 U.S.C. § 1225(b)(2), *see* Pet. ¶ 25, when in fact ICE has lawfully detained him pursuant to 8 U.S.C. § 1231(a) because he is subject to reinstated final order of removal, *see* I-871; Ans Ex. G ("I-294").

By its plain terms, § 1231(a)(5) authorizes DHS to reinstate a prior order of removal upon finding "that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). That is what happened here. And in such circumstances, "'the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under [the immigration laws], and the alien shall be removed under the prior order at any time after the reentry." *Id.* In short, Petitioner's detention arises under 8 U.S.C. § 1231 because "§ 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).

### B.   Petitioner's Post-Final-Order Detention is Constitutional

Where, as here, an alien is subject to a final order of removal, there is a 90-day "removal period," during which the government "shall" remove the noncitizen. 8 U.S.C. § 1231(a)(1). Detention during this period is mandatory. *See* 8 U.S.C. § 1231(a)(2). Here, Petitioner has been in post-final-order detention for approximately 18 days total—10 days in 1998, plus 8 days since his recent arrest—which is well within the mandatory 90-day removal period during which detention is mandatory.[2] As a result, Petitioner is not eligible for a bond hearing. *See* 8 U.S.C. §§ 1231(a)(2), (5); *Guzman Chavez*, 594 U.S. at 526.

Nor is Petitioner's detention unconstitutionally prolonged. As noted above, the INA provides for a mandatory 90-day detention period for aliens subject to final orders of removal, and here, Petitioner has been detained for less than 30 days. Indeed, as courts in this District have recognized, any prolonged-detention challenges under § 1231 "for less than six months must be dismissed as premature." *Kevin A.M. v. Essex Cnty. Corr. Facility*, No. 21-11212 (SDW), 2021 WL 4772130, at *2 (D.N.J. Oct. 12, 2021); *see also Luma v. Aviles*, No. 13-6292 (ES), 2014 WL 5503260, at *4 (D.N.J. Oct. 29, 2014) ("To state a claim under *Zadvydas*, the presumptively

---

[2] Consistent with a recent decision from this Court, Respondents calculate the detention period for purposes of § 1231(a) by adding up the total time "spent in post-final order detention," even if that includes separate periods of post-final-order detention. *Patel v. Bondi*, No. 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025); *but see Tadros v. Noem*, No. 25-4108 (EP), 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding removal period ran in terms of consecutive days from date final removal order issued, not time in detention).

reasonable six-month removal period must have expired at the time the Petition was filed; any earlier challenge to post-removal-order detention is premature and subject to dismissal."); *but see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (disagreeing with decisions like *Kevin A.M.* and granting writ for under 6 months of detention in third-country removal case where court found likelihood of removal was not reasonably foreseeable).

The Court should dismiss this petition because Petitioner's detention without bond—which, as discussed below, is the only cognizable and non-jurisdictionally-barred claim at issue— is lawful under § 1231(a) and does not violate due process.

## II.   Any Challenges to the Reinstatement Order and Arrest Also Fail

To the extent the petition could be read to assert Fourth and Fifth Amendment claims challenging the arrest pursuant to the reinstated removal order, or the procedures in reinstating the final removal order, *see* Pet. ¶¶ 96-98, those claims are barred by 8 U.S.C. § 1252(b)(9) because they raise legal or factual questions that can be raised through the petition for review process. *Khalil v. President, United States of America*, 2026 WL 111933, at *8 (3d Cir. Jan. 15, 2026); *see id.* at * 14 ("No one disputes that a PFR court can hear constitutional claims."); *see also Babula v. Immigr. & Naturalization Serv.*, 665 F.2d 293, 295 (3d Cir. 1981) (reviewing Fourth Amendment claims related to warrantless arrests on petition for review of a final of removal); *Avila-Macias v. Ashcroft*, 328 F.3d 108, 110 (3d Cir. 2003) (exercising jurisdiction over challenge to reinstatement order).

More still, Respondents lawfully followed the procedures for reinstating the removal order.  To effectuate reinstatement, "an immigration officer must find that (1) the alien was subject to a prior order of removal; (2) the alien is the same person as the one named in the prior order (*i.e.,* confirmation of identity) and (3) the alien unlawfully reentered the country." *Ponta-Garcia v. Atty' Gen.*, 557 F.3d 158, 161 (3d Cir. 2009)  (citing  8 C.F.R. § 241.8(a)(1)-(3)). The relevant regulation also allows for notice of the reinstatement and allows the noncitizen to make a "written or oral statement contesting the determination."  *Id.* (quoting 8 C.F.R. § 241.8(b)).[3] Respondents followed these procedures here.

---

[3] The Third Circuit has upheld these regulations in the face of a due process challenge, finding 8 C.F.R. § 241.8 a reasonable construction of § 1231(a)(5), which "makes quite clear Congress's intent to expedite and streamline reinstatement determinations," while recognizing, in the context of reinstatement, noncitizens "have already been ordered removed, and thus have already been provided with the requisite procedures and review." *Ponta-Garcia*, 557 F.3d at 162; *see also id.* at 163 ("Remembering that a reinstatement determination can only be applied to a person who was already subject to a prior order of removal with its attendant pre- and post-order protections, there is no issue of constitutional concern.").

An immigration officer correctly concluded that Petitioner met each of the three requirements in 8 C.F.R. § 241.8(a)(1)-(3), which allow for reinstatement of a final removal order: Petitioner (1) was ordered removed March 27, 1998; (2) subsequently removed April 6, 1998; and (3) unlawfully reentered the country thereafter. *See* I-871; *see also* Final Order of Removal. Petitioner also received notice and an opportunity to provide a statement contesting the reinstatement determination. *See* I-871. According to the document, he refused to do so. To the extent Petitioner claims he was entitled to a hearing before Respondents could reinstate the removal order, Third Circuit precedent forecloses that argument. *See Ponta-Garcia*, 557 F.3d at 161 (holding that an alien "subject to reinstatement 'has no right to a hearing before an immigration judge'" prior to reinstatement (quoting 8 C.F.R. § 241.8(a))).

Finally, any claim challenging Petitioner's arrest without a warrant, to the extent it were not jurisdictionally barred and cognizable through a habeas petition,[4] is also without merit. There is no warrant requirement prior to reinstating a final order of removal and initiating post-final-order detention and, in any event, ICE issued a warrant the day of the arrest. *See* I-205.

***

Respondents respectfully request that the Court deny habeas relief and dismiss the petition. We thank the Court for its attention to this matter.

Respectfully submitted,

TODD BLANCHE
U.S. Deputy Attorney General

JORDAN FOX
Chief of Staff & Associate Deputy
  Attorney General
Special Attorney

By:   */s/ David Inkeles*
     DAVID INKELES
     Assistant United States Attorney
     *Attorneys for Respondents*

---

[4] The appropriate avenue for Petitioner to assert this challenge is in immigration court, through a motion to suppress, not a habeas petition seeking release. *See, e.g., Oliva-Ramos v. Att'y Gen.,* 694 F.3d 259, 270-72 (3d Cir. 2012); *United States v. Mitra-Hernandez*, No. 20-1175, 2022 WL 205419, at *1 (3d Cir. Jan. 24, 2022).

5

cc:    Counsel of Record (via ECF)